IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


DARRYL VON YOUNG,
       Petitioner,

vs.                                    Case No.: 3:06cv98/RV/EMT

WALTER A. McNEIL,[1]
       Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1).  Respondent filed an answer and relevant portions of the state court record (Doc. 13).  Petitioner filed a reply (Doc. 18).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

## I.      BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are undisputed and established by the state court record (Doc. 13).  Following a jury trial, Petitioner was found guilty of one count of burglary of an unoccupied conveyance and one count of petit theft (*id.*, Ex. C at 1).  On April 24, 2003, Petitioner was sentenced to ten (10) years in prison for the burglary count and time served for the petit theft count, with pre-sentence jail credit of one year and 217 days (*id.*, Ex. F).  Petitioner

---

[1]Walter A. McNeil succeeded James McDonough as Secretary for the Department of Corrections, and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

directly appealed his conviction and sentence to the Florida First District Court of Appeal ("First DCA").  The appellate court affirmed the conviction and sentence per curiam without written opinion on June 21, 2004, with the mandate issuing July 7, 2004 (*id.*, Ex. J).  Young v. State, 875 So. 2d 1246 (Fla. 1st DCA June 21, 2004) (Table).  Petitioner did not seek certiorari review by the Florida Supreme Court or the United States Supreme Court.

On July 29, 2004, Petitioner filed a pro se motion for postconviction relief under Rule 3.850 of the Florida Rules of Criminal Procedure (*id.*, Ex. K, L).  He subsequently filed an amended motion (*id.*, Exs. M, N).  The trial court summarily denied Petitioner's Rule 3.850 motion in a written order rendered on March 24, 2005 (*id.*, Ex. O).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on August 4, 2005, with the mandate issuing August 20, 2005 (*id.*, Exs. P, Q).  Young v. State, 908 So. 2d 1063 (Fla. 1st DCA Aug. 4, 2005) (Table).

Petitioner filed the instant habeas action on March 2, 2006 (Doc. 1).  Respondent concedes that the petition is timely (Doc. 13 at 4).

II.     TRIAL EVIDENCE

A summary of the evidence adduced at Petitioner's trial provides a helpful context for resolution of his habeas claim.

On September 20, 2002, at approximately 2:00 a.m., Shannon Mulinix was arrested for driving under the influence ("DUI") (Doc. 13, Ex. B at 21–22).  Ms. Mulinix was driving a vehicle owned by her boyfriend, Daniel Marr, when she was arrested.  Upon her arrest, Ms. Mulinix was transported to the county jail, and the car was left near the Pensacola Civic Center with all of her belongings in it (*id.* at 22).  When Mr. Marr learned that Ms. Mulinix had been arrested, he located his car and discovered that someone had broken into the driver's side window, and his CDs were missing (*id.* at 25–26).  He drove his car to a convenience store and made contact with a police officer at the store (*id.* at 27).  The officer dusted the car for fingerprints (*id.*).  Mr. Marr then proceeded to the sheriff's department to bail his girlfriend out of jail (*id.*).  Ms. Mulinix told Mr. Marr that she had left her purse and cell phone in his car when she was arrested and that those items were missing (*id.*).  Mr. Marr called Ms. Mulinix's cell phone, and someone named Darryl (Petitioner) answered (*id.* at 28).  Mr. Marr asked Petitioner why he had the cell phone, and

Petitioner told him that he found it (*id.*).  Mr. Marr offered to pay Petitioner $100.00 if he returned the cell phone (*id.*).  Petitioner agreed to meet Mr. Marr at a gas station to exchange the money for the cell phone (*id.* at 28–29).  Mr. Marr suspected that Petitioner had broken into his car, so he asked a few police officers to follow him to the store (*id.* at 29).  Upon arriving at the convenience store, Mr. Marr saw Petitioner arrive in a tan car (*id.* at 30).  Mr. Marr testified that as soon as Petitioner saw the police officers, he attempted to leave the area (*id.*).  Mr. Marr testified that Petitioner seemed "skitty" and nervous (*id.* at 31).

Deputy Stan Pagonis testified that he followed Mr. Marr from the police station to a convenience store (*id.* at 45).  Deputy Pagonis observed Petitioner standing beside the gas pumps holding a cell phone (*id.*).  Deputy Pagonis approached Petitioner and questioned him about the cell phone (*id.* at 46).  Petitioner stated that someone had given him the phone, and he wanted to return it to its rightful owner (*id.*).  Deputy Pagonis arrested Petitioner and discovered Mr. Marr's Target credit card in his pocket (*id.* at 47).

Officer Kenneth McDaniels testified that he investigated the burglary of Mr. Marr's car (*id.* at 34).  He took a thumb print off the handle of the car door, but it was not of any value (*id.*).  When he arrived at the convenience store, Petitioner was already in custody (*id.* at 36).  Officer McDaniels transported Petitioner to the police station (*id.*).  On the way to the station, Petitioner stated that he did not break into Mr. Marr's car (*id.*).  Petitioner indicated that he and a girl were at the Bluffs Park on Scenic Highway where he found a cell phone and a credit card (*id.*).  Petitioner stated that he contacted Mr. Marr to see whether he would give him a reward (*id.*).  When they arrived at the police station, a correctional officer noticed that Petitioner's left shoe was "full of glass" (*id.* at 37).  Officer McDaniels seized the glass (*id.*).  Officer McDaniels testified that the glass was shattered into small pieces, like safety glass, and was consistent with the glass that was found broken inside Mr. Marr's car (*id.*).  The glass was introduced into evidence for the jury's review (*id.* at 37–38).

Detective Erik William Goss testified that he interviewed Petitioner at the Pensacola Police Department ("PPD") (*id.* at 41).  Petitioner told Detective Goss that it was just a coincidence that he found the cell phone and credit card (*id.* at 42).  Petitioner stated that he was at the Bluffs Park with a girl that he had picked up at a bar, although he did not recall the girl's name or the name of the bar (*id.* at 42–43).

The State rested its case, and the defense rested as well (*id.* at 47).  Outside of the jury's presence, Petitioner testified, under oath, that he did not wish to testify and that he was "very" satisfied with his attorney's representation (*id.* at 48–49).

The state and defense presented their closing arguments (*id.* at 56–69).  After deliberating for fifty-four (54) minutes, the jury returned a verdict of guilty of burglary of an unoccupied conveyance and petit theft (*id.* at 81–82).

III.   STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.  In relevant part, section 2254(d) now provides:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

---

[2]Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529

U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); cf. Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion."  Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing

evidence."  28 U.S.C. § 2254(e)(1); *see e.g.* <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); <u>Jones v. Walker</u>, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* <u>Panetti v. Quarterman</u>, --- U.S. --- 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claim.

IV.    PETITIONER'S CLAIM

<u>Claim One:  "Counsel failed to preserve for appeal the issue of the evidence being insufficient to prove the element of identity."</u>

Petitioner contends that his trial counsel was ineffective for failing to move for a judgment of acquittal ("JOA") based on insufficiency of the evidence to prove that he was the person who broke into the vehicle and stole the cell phone and charge card (Doc. 1 at 4–4a).  Petitioner states that Mr. Marr, Officer McDaniel, and Detective Goss testified that Petitioner told them he found the stolen items at the Bluffs, and the evidence showed that Petitioner was meeting Mr. Marr to return the items when Petitioner was arrested (*id.* at 4a).  Petitioner additionally states that the thumbprint found on the car door and the pieces of glass found in his shoe constituted circumstantial evidence that was insufficient to refute Petitioner's explanation as to why he was in possession of the stolen items (*id.* at 4b).  Petitioner states that as a result of defense counsel's failure to make a motion for JOA, the issue of sufficiency of the evidence was not preserved for appellate review (*id.* at 4a).[3]

---

[3]The state court record shows that Petitioner raised one issue on direct appeal of his conviction, that is, whether the trial court committed fundamental error in finding sufficient circumstantial evidence that Petitioner broke into the victim's car and stole a cell phone and other items (*see* Doc. 13, Ex. H).  Under Florida law, the issue would have been

A.      Clearly Established Supreme Court Law

The legal standard clearly established by the Supreme Court for ineffectiveness of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  *See* Fugate v. Head, 261 F.3d 1206, 1216–17 (11th Cir. 2001); Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002) (both citing Williams v. Taylor and Strickland).   The two components of an ineffectiveness claim under Strickland are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other.  Strickland, 466 U.S. at 697, 104 S. Ct. at 2069; Wellington, 314 F.3d at 1260.  In assessing performance, the court considers whether "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  466 U.S. at 686, 104 S. Ct. at 2064.  "The court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  466 U.S. at 690, 104 S. Ct. at 2066.  Petitioner must show that "no competent counsel would have taken the action that his counsel did take."  Fugate, 261 F.3d at 1217 (citation omitted).

To establish ineffective assistance, Petitioner must provide factual support for his contentions regarding counsel's performance.  Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).  Bare, conclusory allegations are insufficient.  Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991).  Furthermore, "[a]n ambiguous or silent record is not sufficient to disprove the strong and continuing presumption . . . that [counsel] did what he should have done and that he exercised reasonable professional judgment."  Chandler v. United States, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc) *cert. denied*, 121 S.Ct. 1217, 149 L. Ed. 2d 129 (2001).

> Trying cases is no exact science.  And as a result, we must never delude ourselves that the fair review of a trial lawyer's judgment and performance is an activity that calls for great precision or for a categorical approach.  When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate."  Atkins v. Singletary, 965 F. 2d 952, 958 (11th Cir. 1992).  And, "a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy."  Devier v. Zant, 3 F.3d 1445, 1450 (11th Cir. 1993).  Even if many reasonable lawyers would not

---

subject to a less stringent standard of review, that is, a harmless error standard, if Petitioner's trial counsel had preserved the issue of sufficiency of the evidence for appellate review by making a motion for judgment of acquittal.  *See* F.B. v. State, 852 So. 2d 226, 229–30 (Fla. 2003).

have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it can be shown that no reasonable lawyer, in the circumstances, would have done so.

Rogers v. Zant, 13 F. 3d 384, 386 (11th Cir. 1994); *see also* Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (to show counsel's performance was unreasonable, defendant must establish that no competent counsel would have taken the action that his counsel did take); Chandler, 218 F.3d at 1313 (issue is not what is possible, prudent, or appropriate, but what is constitutionally compelled) (citing Burger v. Kemp, 483 U.S. 776, 107 S. Ct. 3114, 3126, 97 L. Ed.2d 638 (1987)).

As stated by the Eleventh Circuit:

> No absolute rules dictate what is reasonable performance for lawyers. [citing Strickland, 104 S. Ct. at 2065; other citations omitted]. "Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Strickland, 104 S. Ct. at 2065; [other citations omitted]. The law must allow for bold and for innovative approaches by trial lawyers. And, the Sixth Amendment is not meant "to improve the quality of legal representation," but "simply to ensure that criminal defendants receive a fair trial." Strickland, 104 S. Ct. at 2065.

Chandler, 218 F.3d at 1307. In determining whether counsel's decision was reasonable, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. Wellington, 314 F.3d at 1260. The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693, 104 S. Ct. at 2067). However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94, 104 S. Ct. at 2068. Instead, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S. Ct. at 2068. Indeed, it would be "contrary to" the law clearly established in Strickland

for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405–06, 120 S. Ct. at 1519.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95, 104 S. Ct. at 2068.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695, 104 S. Ct. at 2068–69.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.  Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways.  Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect.  Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.  Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

Id. at 695–96, 104 S. Ct. at 2069.

B.      Federal Review of State Court Decision

Petitioner presented his ineffective assistance of counsel claim to the state courts in his Rule 3.850 motion (Doc. 13, Ex. N at 33–37).  In the written order denying Petitioner's claim, the state court determined that although Petitioner contended that he merely "found" the stolen items that were in his possession, Petitioner was in possession of recently stolen property, and the State produced enough evidence to make any motion for judgment of acquittal "completely baseless" (Doc. 13, Ex. O at 44–45).  In light of this determination, the state court concluded that Petitioner failed to show he was prejudiced by counsel's failure to move for judgment of acquittal because such a motion had no likelihood of success (*id.* (citing Rogers v. State, 567 So. 2d 483 (Fla. 1st DCA 1990) (defendant not prejudiced by counsel's failure to move for judgment of acquittal if the motion had no likelihood of success)).

The state court did not specifically cite to any United States Supreme Court case for the standard to be applied in resolving Petitioner's claim.  However, as previously noted, a state court is not required to cite United States Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early, 537 U.S. at 8.  In the instant case, the state court's reasoning did not contradict Strickland.  The state court determined that the motion for judgment of acquittal had no likelihood of success; therefore, Petitioner was not prejudiced by counsel's failure to make the motion.  This reasoning does not contradict the requirement that Petitioner show a reasonable probability that the outcome of the proceeding was affected by counsel's alleged error.  Furthermore, Petitioner has not shown that the state court reached an opposite conclusion from the United States Supreme Court on a question of law, and Petitioner has not identified any United States Supreme Court case with a set of materially indistinguishable facts that was decided differently from his case, nor is the court aware of any such case.  Therefore, Petitioner has failed to show that the state court's decision was contrary to Supreme Court law.

Additionally, Petitioner has failed to show that the state court's decision constituted an unreasonable application of Strickland.  Petitioner argued in both his federal petition and the Rule 3.850 motion that his counsel should have moved for a judgment of acquittal because the State's evidence failed to satisfy Florida's sufficiency of the evidence standard for a conviction based upon

circumstantial evidence, which is a standard different from the federal standard set forth in <u>Jackson v. Virginia</u>, 443 U.S. 307, 319,  99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (*see* Doc. 1 at 4a–4b, supporting memorandum at 4–19).  Where the evidence against the defendant is circumstantial, the Florida Supreme Court has set the following standard:

> A motion for judgment of acquittal should be granted in a circumstantial evidence case if the state fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt.  *See* <u>Wilson v. State</u>, 493 So. 2d 1019, 1022 (Fla. 1986).  Consistent with the standard set forth in <u>Lynch [v. State</u>, 293 So. 2d 44 (Fla. 1974)], if the state does not offer evidence which is inconsistent with the defendant's hypothesis, "the evidence [would be] such that no view which the jury may lawfully take of it favorable to the [state] can be sustained under the law."  293 So. 2d at 45.  The state's evidence would be as a matter of law "insufficient to warrant a conviction."  Fla. R. Crim. P. 3.380.
>
> It is the trial judge's proper task to review the evidence to determine the presence or absence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences.  That view of the evidence must be taken in the light most favorable to the state.  <u>Spinkellink v. State</u>, 313 So. 2d 666, 670 (Fla. 1975), *cert. denied*, 428 U.S. 911, 96 S. Ct. 3227, 49 L. Ed. 2d 1221 (1976).  The state is not required to "rebut conclusively every possible variation" of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events.  *See* <u>Toole v. State</u>, 472 So. 2d 1174, 1176 (Fla. 1985).  Once that threshold burden is met, it becomes the jury's duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.

<u>State v. Law</u>, 559 So. 2d 187, 188–89 (Fla.1989) (footnotes omitted).

In the instant case, the state court determined that the evidence was sufficient under the Florida circumstantial evidence standard to render a motion for judgment of acquittal "clearly baseless."  Determination of whether the State's evidence was legally sufficient to survive an acquittal motion under the Florida circumstantial evidence standard is solely within the province of the Florida courts.  "[S]tate courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law.  <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) (citations and footnote omitted); <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1055 (11th Cir. 1983).  Thus, this court must defer to the state court's determination that there was no legal basis for a motion for judgment of acquittal under Florida law.  In light of the state court's determination, Petitioner failed to satisfy the performance prong of the

<u>Strickland</u> standard because counsel's decision to forego a legally baseless motion is not unreasonable.  Furthermore, in the absence of a legal basis for the trial court's granting the motion, there is no reasonable probability that the outcome of trial would have been different if counsel had made the motion.  Therefore, Petitioner failed to demonstrate that the state court's denial of his claim was an unreasonable application of <u>Strickland</u>.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Walter A. McNeil is substituted for James McDonough as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this <u>24th</u> day of February 2009.

*/s/ Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**